IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

   **Plaintiff,**

v.

**RAYMOND DAVID PHILLIPS,**

   **Defendant.**

Case No. 22-CR-145-JFH

## OPINION AND ORDER

   Before the Court are two pretrial motions and an expert notice filed by Defendant Raymond David Phillips ("Defendant"). First, Defendant filed a Motion to Dismiss Certain Counts ("Motion to Dismiss"). Dkt. No. 39. The United States of America ("Government") filed a response in opposition [Dkt. No. 53] and, after obtaining leave from the Court, Defendant filed a reply brief [Dkt. No. 58]. Next, Defendant filed a Motion in Limine seeking to prohibit witnesses from testifying while wearing Sheriff Deputy uniforms. Dkt. No. 50. The Government filed a response in opposition [Dkt. No. 51] and, after obtaining leave from the Court, Defendant filed a reply brief [Dkt. No. 60]. Finally, Defendant filed an expert notice [Dkt. No. 49] to which the Government objected [Dkt. No. 52]. After obtaining leave from the Court, Defendant filed a reply brief. Dkt. No. 59. The Court will address the motions and expert notice in turn.

## BACKGROUND

   On December 14, 2022, the United States of America ("Government") filed a Superseding Indictment charging Defendant with seven counts: (1) Arson, in violation of 18 U.S.C. 844(i); (2) Attempt to Destroy and Injure Property in Indian Country, in violation of 18 U.S.C. §§ 1363, 1151, and 1152; (3) Use of Fire to Commit a Felony, in violation of 18 U.S.C. § 844(h)(1); (4) Animal Crushing in Indian Country, in violation of 18 U.S.C. §§ 48, 1151, and 1152; (5) Cruelty to

Animals in Indian Country, in violation of 18 U.S.C. §§ 13, 1151, 1152, and 21 O.S. § 1685; (6) Simple Assault in Indian Country, in violation of 18 U.S.C. §§ 113(a)(5), 1151, and 1152; and (7) Simple Assault in Indian Country, in violation of 18 U.S.C. §§ 113(a)(5), 1151, and 1152. Dkt. No. 10. This case is currently on the Court's jury trial docket set to begin on June 12, 2023. Dkt. No. 42.

This case arises out of an incident that occurred at the Eagle Bluff Resort ("Resort") in Tahlequah, Cherokee County, Oklahoma on September 3, 2022. Dkt. No. 39 at 3. Witnesses to the incident stated that Defendant was upset after his significant other had been arrested at the Resort earlier in the day. *Id*. at 4. Defendant was heard making threatening remarks about the Resort, such as "that he was going to make the [R]esort pay" and that "he was going to burn it all." *Id*. Defendant was seen tearing down his campsite, placing his camping items into a large pile in the middle of his campsite, and setting them on fire. *Id*. Individuals in nearby campsites were able to put out the fire. Dkt. No. 39 at 4. Defendant then confronted the owner of the Resort, Sunghwan Yun ("Yun"). *Id*. Specifically, Defendant decapitated Yun's cat and threw the cat's head at Yun. *Id*. at 4-5. Defendant then fled the Resort, but was later apprehended by Grand River Dam Authority police officer, Lieutenant Timothy N. Cooper ("Cooper"), who Defendant allegedly assaulted during the arrest. Dkt. No. 39 at 3, 5; Dkt. No. 53 at 2.

## AUTHORITY AND ANALYSIS

### I. Motion to Dismiss Certain Counts [Dkt. No. 39]

Defendant filed his Motion to Dismiss seeking to dismiss certain counts of the Superseding Indictment under various theories. Dkt. No. 39. Defendant seeks to dismiss Counts One, Two, Three, Six and Seven because he argues that they are constitutionally insufficient and fail to put him on fair notice of the crimes charged. *Id*. at 1. In the alternative, Defendant argues that Counts

One, Two, and Three are multiplicitous and, therefore, two of the three counts should be dismissed. *Id*. Next, Defendant seeks to dismiss Count Five because it attempts to assimilate a state law where a federal statute already occupies the field. *Id*. In the alternative, Defendant argues that Counts Four and Five are multiplicitous and, therefore, one of the counts must be dismissed. *Id*. at 2. The Court will address each of these arguments in turn.

### A. Sufficiency of the Indictment

Defendant argues that Counts One, Two, Three, Six and Seven are constitutionally insufficient and, therefore, must be dismissed. Dkt. No. 39 at 8-10, 18-20. "An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006) (quoting *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997)). "An indictment that sets forth the words of the statute generally is sufficient so long as the statute itself adequately states the elements of the offense." *Dashney*, 117 F.3d at 1205 (internal citations omitted). "[T]he indictment should be read as a whole and interpreted in a common-sense manner . . . . Courts . . . do not insist that any particular word or phrase be used in stating an essential element." *United States v. Stoner*, 98 F.3d 527, 531 (10th Cir. 1996) (quoting *United States v. Kilpatrick*, 821 F.2d 1456, 1463 (10th Cir. 1987) *cert. granted in part*, 484 U.S. 1003 (1988), *and aff'd*, 487 U.S. 250 (1988)).

#### i. Counts One, Two, and Three

Regarding Counts One, Two, and Three, Defendant argues that the indictment does not put Defendant on fair notice of the charges against him. Dkt. No. 39 at 8-10. Specifically, Defendant argues that he "cannot tell what conduct on September 3, 2022 constituted a malicious attempt to destroy, injure, or damage real or personal property." *Id*. at 8. Defendant contends that "[w]hile

the date and general location are clearly alleged in the Superseding Indictment, [Defendant] cannot be expected to guess what conduct on his part was the alleged attempts to maliciously destroy property . . . ." *Id*. at 9 (citing *United States v. Sumner*, 89 F. Supp. 1161, 1165 (N.D. Okla. 2015)).

Upon review of the superseding indictment, the Court finds that it provides sufficient notice of the charges against Defendant in Counts One, Two, and Three. First, Counts One, Two, and Three track the language of their respective statutes. *See* Dkt. No. 10 at 1-2; 18 U.S.C. §§ 844(i), 1363, 844(h)(1). Each of the statutes set forth the elements of their respective offenses. *See* 18 U.S.C. §§ 844(i), 1363, 844(h)(1). Contrary to Defendant's assertion, the Government is not required to state in the indictment whether the conduct included "a propane bottle/tank" or whether the fire was "within close distance of an occupied campsite." *See e.g.*, Dkt. No. 39 at 8. By an indictment, Defendant is "not entitled to know all the evidence the [G]overnment intends to produce, but only the theory of the [G]overnment's case." *United States v. Dunn*, 841 F.2d 1026, 1030 (10th Cir. 1988) (emphasis removed) (citing *United States v. Giese*, 597 F.2d 1170, 1181 (9th Cir.), *cert. denied*, 444 U.S. 979 (1979)). Therefore, because Counts One, Two, and Three track the language of their respective statutes, and the statutes set forth the elements of the offenses, Counts One, Two, and Three are constitutionally sufficient.

### ii. Counts Six and Seven

Defendant also challenges the sufficiency of Counts Six and Seven. First, Defendant challenges Counts Six and Seven because he argues that they fail to state an offense. Dkt. No. 39 at 18-19. Defendant further challenges Count Seven arguing that it is insufficient to put Defendant on fair notice of the crime charged because it lacks specificity. *Id*. at 19.

As stated *supra*, "[a]n indictment that sets forth the words of the statute generally is sufficient so long as the statute itself adequately states the elements of the offense." *Dashney*, 117

F.3d at 1205. Counts Six and Seven charge Defendant with assaulting Yun and Cooper, respectively, in violation of 18 U.S.C. §§ 113(a)(5), 1151, and 1152. Dkt. No. 10 at 3.

The elements of simple assault in Indian Country are: (1) Defendant assaulted an individual; (2) Defendant was an Indian; and (3) the assault took place within Indian Country. *See* Eighth Circuit Model Criminal Jury Instructions § 6.18.113(5); *see also* 18 U.S.C. §§ 113(a)(5), 1151, and 1152. Because Counts Six and Seven track the language of §§ 113(a), 1151, and 1152, and these statutes, in combination, set forth the elements of the offense of simple assault in Indian Country, the indictment both states an offense and provides sufficient notice the charges against Defendant in Counts Six and Seven.

Finally, Defendant argues that throwing a cat's head, while "a deeply offensive act," does not constitute assault under § 113(a) because it is not an attempt to inflict or a threat to inflict injury upon Yun. Dkt. No. 39 at 18-19 (citing *United States v. Muskett*, 970 F.3d 1233, 1241 (10th Cir. 2020) (defining "assault" under § 113(a) as "either a willful attempt to inflict injury upon the person of another, or by a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm.")). However, whether Defendant throwing a cat's head at Yun was a willful attempt to inflict injury or a threat to inflict injury upon Yun and whether this caused Yun a reasonable apprehension of immediate bodily harm, are factual issues which are proper for a jury to resolve at trial. For these reasons, Counts Six and Seven are constitutionally sufficient.

### B. Assimilation

Next, Defendant argues that Count Five must be dismissed because it attempts to assimilate a state law where a federal statute already occupies the field. Dkt. No. 39 at 12-13. Defendant is charged in Count Five with Cruelty to Animals in Indian Country, in violation 18 U.S.C. §§ 13,

1151, 1152, and 21 O.S.§ 1685.  Dkt. No. 10 at 2.  In its response, the Government does not set forth any argument regarding the issue of assimilation.  Dkt. No. 53 at 8.  Instead, the Government states that it will agree to dismiss Count Five if Defendant "concedes" that his behavior is "covered by" Count Four.  Dkt. No. 53 at 8.  However, it is this Court's opinion that by charging Defendant under both a federal and state statute based upon the same conduct, it is the Government who concedes that the federal statute covers Defendant's conduct and precludes the application of state law.  Regardless, the Court will analyze Count Five under the Assimilative Crimes Act.

The Assimilative Crimes Act ("ACA") makes applicable on federal enclaves certain criminal laws of the state in which the enclave is located. The ACA reads:

> Whoever within or upon any [federal enclave] is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State ... in which such place is situated ... shall be guilty of a like offense and subject to a like punishment.

18 U.S.C. § 13(a).  The ACA applies to crimes committed within Indian Country pursuant to 18 U.S.C. § 1152.  *United States v. Pino*, 606 F.2d 908, 915 (10th Cir. 1979); *see also Williams v. United States*, 327 U.S. 711, 713-14 (1946); *United States v. Polk*, 61 F.4th 1277, 1279 (10th Cir. 2023) (citing *United States v. Langford*, 641 F.3d 1195, 1197 (10th Cir. 2011) (explaining that "in conjunction," ACA and § 1152 "(1) assimilate state criminal law into federal law" for acts committed on federal enclaves and "(2) apply these assimilated state crimes to acts committed in Indian country")).

The ACA was enacted in the 1820s when "federal statutory law punished only a few crimes committed on federal enclaves, such as murder and manslaughter." *Lewis v. United States*, 523 U.S. 155, 160 (1998).  Congress enacted the ACA to allow defendants to be federally prosecuted for state offenses committed on federal enclaves when federal statutes did not outlaw such offenses.  *Id*. at 161.  "The ACA's basic purpose is one of borrowing state law to fill gaps in the

6

federal criminal law that applies on federal enclaves." *Id*. at 160 (internal citation omitted).  In accordance with the language of the ACA and its gap-filling purpose, the United States Supreme Court has articulated a two-step test to determine when state law can be assimilated in a federal enclave.

First, the Court must ask, "Is the defendant's 'act or omission ... made punishable by any enactment of Congress.'"  *Id*. at 164 (citing 18 U.S.C. § 13(a)).  To make this determination, the Court considers whether the federal statute "seek[s] to punish approximately the same wrongful behavior" as the state statute.  *Lewis,* 523 U.S. at 165.  If the answer is "no," the ACA presumptively assimilates the state law, and the Government would be permitted to bring state charges.  *Id*. at 164.  However, if the answer is "yes," the Court "must ask the further question whether the federal statutes that apply to the 'act or omission' preclude application of the state law in question."  *Id*.  The Supreme Court has identified three circumstances when a federal statute may preclude application of state law:  (1) the state statute's "application would interfere with the achievement of a federal policy," (2) "the state law would effectively rewrite an offense definition that Congress carefully considered," or (3) "federal statutes reveal an intent to occupy so much of a field as would exclude use of the particular state statute at issue."  *Id*. at 164-65.

The ACA "will not apply where both state and federal statutes seek to punish approximately the same wrongful behavior."  *Lewis*, 523 U.S. at 165.  If an offense has been defined and prohibited by federal law, the federal offense cannot "be redefined and enlarged" by the ACA.  *Williams*, 327 U.S. at 717.  Moreover, "[t]he fact that the definition of [an] offense as enacted by Congress results in a narrower scope for the offense than that given to it by the State, does not mean that the Congressional definition must give way to the State definition."  *Id*. at 717-18.  Nor can "a conflicting state definition . . . give a narrower scope to the offense than that given

7

to it by Congress." *Id*. at 718. That said, "a substantial difference in the kind of wrongful behavior covered . . . will ordinarily indicate a gap for a state statute to fill." *Lewis*, 523 U.S. at 165. To make this determination, the Court considers the offenses in question "in a generic sense" to determine whether a federal statute prohibits acts of the same "general type or kind" as the state statute at issue. *Williams*, 327 U.S. at 722.

Here, it is alleged that Defendant decapitated a cat belonging to Yun. Dkt. No. 39 at 4-5. Under the *Lewis* test, the Court must first ask whether Defendant's act is made punishable by any enactment of Congress. 523 U.S. at 164. Defendant is charged in Count Four with Animal Crushing in Indian Country, in violation of 18 U.S.C. §§ 48, 1151, and 1152 based upon allegedly decapitating a cat. Dkt. No. 10 at 2. Undoubtedly, Defendant's alleged act is punishable under a federal statute.

Further, the federal statute and state statute clearly seek to punish the same wrongful behavior. Under 18 U.S.C. § 48, it unlawful "to purposely engage in animal crushing." 18 U.S.C. § 48(a)(1). "Animal crushing" is defined under the statute as "conduct in which one or more living non-human mammals, birds, reptiles, or amphibians is purposely crushed, burned, drowned, suffocated, impaled, or otherwise subjected to serious bodily injury . . . ." *Id*. at § 48(f)(1). "[S]erious bodily injury means bodily injury which involves—(A) a substantial risk of death; (B) extreme physical pain; (C) protracted and obvious disfigurement; or (D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty . . . ." 18 U.S.C. § 1365(h)(3). Similarly, the Oklahoma statute makes it unlawful to "willfully or maliciously torture, destroy or kill, or cruelly beat or injure, maim or mutilate any animal . . . ." 21 O.S. § 1685.

Upon review of the federal and state statute at issue here, the Court concludes that Defendant's alleged act—decapitating a cat—is made punishable by an enactment of Congress in

18 U.S.C. § 48.  The Court further finds that both the federal and state statute seek to punish the same conduct—animal cruelty.  Regardless of any definitional differences between the federal and state statute, such as the use of "maim or mutilate" in the state statute versus the use of "protracted loss or impairment of the function of a bodily member" in the federal statute, it is clear the federal statute was intended to occupy the field of animal cruelty.  Therefore, the Government may not evade the ACA and get two bites at the apple by charging Defendant under both the federal and state statute.  There are no gaps for Oklahoma law to fill regarding Defendant's alleged act and, thus, the ACA prohibits the charging of Cruelty to Animals in Indian Country, in violation 18 U.S.C. §§ 13, 1151, 1152, and 21 O.S.§ 1685.

### B. Multiplicity

Finally, Defendant argues that Counts One, Two, or Three should be dismissed as multiplicitous and, likewise, Counts Four and Five should be dismissed as multiplicitous.  Dkt. No. 29 at 10-12, 17-18.  Because the Court has determined that Count Five is prohibited under the ACA, the Court need only address Defendant's multiplicity argument as to Counts One, Two, and Three.

"Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior." *United States v. Johnson*, 130 F.3d 1420, 1424 (10th Cir. 1997).  Multiplicitous counts "are improper because they allow multiple punishments for a single criminal offense" in violation of the double jeopardy clause of the Constitution.  *United States v. Jenkins*, 313 F.3d 549, 557 (10th Cir. 2002).  Allowing multiplicitous counts at trial "may falsely suggest to a jury that a defendant has committed not one by several crimes."  *Johnson*, 130 F.3d at 1426 (quotation omitted).  "Once such a message is conveyed to the jury, the risk increases that the jury will be diverted from a careful analysis of the conduct at issue, and will reach a compromise verdict or

assume the defendant is guilty on at least some of the charges." *Id*. (quotation omitted). However, multiplicity is not fatal to an indictment, and district courts have discretion whether to require the prosecution to elect between multiplicitous counts before trial. *Id*. at 1424, 1426. It is only "multiplicitous sentences [which] violate the Double Jeopardy Clause." *United States v. McCullough*, 457 F.3d 1150, 1162 (10th Cir. 2006) (emphasis added) (quotation omitted). If an indictment results in multiplicitous convictions, the proper remedy "is to vacate one of the underlying convictions as well as the sentence based upon it." *Id*. (quotation omitted).

"A person may be prosecuted for more than one crime based on the same conduct if (1) each crime requires proof of a fact that the other does not, or (2) if Congress has clearly expressed its intent to impose cumulative punishment for the same conduct under different statutory provisions." *United States v. Pearson*, 203 F.3d 1243, 1267-68 (10th Cir. 2000) (internal citations omitted). Neither party directs the Court to a statement of congressional intent to impose cumulative punishment. The Court thus focuses on the first inquiry, often called the "same elements test," which functions "as a proxy for congressional intent in the usual case." *United States v. Christie*, 717 F.3d 1156, 1173 (10th Cir. 2013). This test, derived from *Blockburger v. United States*, 284 U.S. 299, 304 (1932), "requires [the Court] to inquire whether each offense at issue contains an element not contained in the other. If the answer is yes, . . . Congress authorized punishments for both offenses; if the answer is no, . . . Congress authorized punishment for only one offense." *Id*. (quotations omitted).

Count One charges Defendant with Arson, in violation of 18 U.S.C. § 844(i). Dkt. No. 10 at 1. Count One requires proof that Defendant used fire to attempt to damage and destroy property used in interstate commerce. 18 U.S.C. § 844(i). Count Two charges Defendant with Attempt to Destroy and Injure Property in Indian Country, in violation of 18 U.S.C. §§ 1363, 1151, and 1152.

Dkt. No. 10 at 1. Count Two requires proof that the charged conduct occurred in Indian Country. 18 U.S.C. §§ 1363, 1151, and 1152. Count Three charges Defendant with Use of Fire to Commit a Felony, in violation of 18 U.S.C. § 844(h)(1). Dkt. No. 10 at 2. Count Three requires proof that Defendant used fire to commit a felony for which he may be prosecuted in a court of the United States. 18 U.S.C. § 844(h)(1).

As between Counts One, Two, and Three, each requires proof of a fact that the other does not. First, Count One requires proof that Defendant used fire to attempt to damage and destroy property used in interstate commerce. 18 U.S.C. § 844(i). Count Two does not require proof of the use of fire, and neither Count Two nor Count Three require proof that the property involved was used in interstate commerce. Next, Count Two requires proof that the charged conduct occurred in Indian Country. Neither Count One nor Count Three require proof that the charged conduct occurred in Indian Country. Finally, Count Three requires proof that Defendant used fire to commit a felony for which he may be prosecuted in a court of the United States. 18 U.S.C. § 844(i). Count Two does not require proof of the use of fire, and neither Count One nor Count Two require proof that Defendant committed any other felony. While arson itself is a felony offense which involves the use of fire, "the term 'any felony' in section 844(h) means any felony other than arson and conspiracy to commit arson." *United States v. Tolliver*, 730 F.3d 1216, 1230 (10th Cir. 2013) (citing *United States v. Konopka*, 409 F.3d 837, 839 (7th Cir. 2005)) (holding that defendant could be sentenced to terms of imprisonment under both § 844(i) and § 844(h)(1) to run consecutively). Therefore, because each of Counts One, Two, and Three require proof of a fact that the other does not, Counts One, Two, and Three are not multiplicitous.

For the foregoing reasons, Defendant's Motion [Dkt. No. 39] is GRANTED IN PART AND DENIED IN PART. The Motion to Dismiss [Dkt. No. 39] is granted in part in that Count

11

Five, Cruelty to Animals in Indian Country, in violation of 18 U.S.C. §§ 13, 1151, 1152, and 21 O.S. § 1685, is DISMISSED without prejudice. The Motion to Dismiss [Dkt. No. 39] is denied as to all other counts.

## II.     Motion in Limine [Dkt. No. 50]

Defendant filed a motion in limine asking the Court to prohibit Government witnesses Loren Nusser ("Nusser") and Diego Gutierrez ("Gutierrez") from testifying while wearing their Sheriff Deputy uniforms. Dkt. No. 50 at 1. On September 3, 2022, Nusser and Gutierrez were camping in the campsite next to Defendant's campsite at the Resort. *Id*. Gutierrez placed the 911 call to report the fire at Defendant's campsite. *Id*. Both Nusser and Gutierrez participated in the efforts to extinguish the fire. *Id*. Nusser and Gutierrez are also Alfalfa County Sheriff Deputies. *Id*. However, they were both off-duty on September 3, 2022 and have not been involved in the prosecution of this case in any official capacity. Dkt. No. 50 at 1. Because Nusser and Gutierrez are lay witnesses and did not act in any official capacity at the time of the incident, nor will they be acting in any official capacity while testifying at trial, Defendant asks that they be prohibited from wearing their Sheriff Deputy uniforms while testifying. *Id*. Defendant argues that if Nusser and Gutierrez testified in uniform, it would "mislead the jury about their role in the case and improperly bolster their credibility." *Id*. at 2-3. The Government argues that while the Court has the discretion to administer its courtroom as it sees fit, "micromanag[ing] the witnesses' reasonable sartorial choices is not well-founded." Dkt. No. 51 at 2.

The Court will not issue a specific dress code for witnesses. At every trial, the Court expects the parties to ensure that their witnesses are dressed appropriately and are not dressed with the intent to prejudice the jury. The Court does not wish to entertain the debate about when a law enforcement officer can, or cannot, wear his or her uniform to court. The Court does not accept

the notion that the wearing of such a uniform prejudices a jury. For this reason, Defendant's Motion in Limine [Dkt. No. 50] is DENIED.

### III.  Defendant's Expert Notice [Dkt. No. 49]

Defendant timely filed a notice of intent to offer expert witness giving notice to the Court and the Government of his intention to offer the expert witness testimony of Randel L. Overton ("Overton") regarding the fire at issue in this case. Dkt. No. 49 at 1. Specifically, Defendant states that Overton will testify regarding his opinion that "the propane bottle connected to the camp stove burner placed in the fire along with various other personal belongings by [Defendant] did not present any danger of exploding or further spreading of the fire." *Id*. Overton based his opinion on his training and experience, his examination of the campground, his review of law enforcement statements, the materials burned in the campfire, and the design of the propane bottle. *Id*. Defendant's notice included Overton's written report, along with his qualifications, list of publications, and list of other cases in which he has testified, as required under Federal Rule of Criminal Procedure 16(b)(1)(C). *Id*.

The Government filed a response objecting to Defendant's notice of intent to offer expert witness testimony arguing (1) that Overton's testimony is irrelevant under Federal Rule of Evidence 401, and (2) that Overton's testimony is not reliable under Federal Rule of Evidence 702. Dkt. No. 52 at 3-7. In the Government's response, it asks the Court to either enter an order excluding Overton's testimony or to conduct a *Daubert* hearing. *Id*. at 1.

#### A. *Daubert*

Admissibility of expert witness testimony is evaluated under Federal Rule of Evidence 702, which permits a qualified expert witness to testify and render an opinion when:

  (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

      (b) The testimony is based on sufficient facts or data;

      (c) The testimony is the product of reliable principles and methods; and

      (d) The expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "When an objection to an expert's testimony is raised, the court must perform *Daubert* gatekeeper duties before the jury is permitted to hear the evidence." *Bright v. Ohio Nat'l Life Assur. Corp.*, 11-CV-475-GKF, 2013 WL 12327512, at *1 (N.D. Okla. Jan. 9, 2013) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 149 (1999)).

"First, the Court determines whether the expert is qualified by knowledge, skill, experience, training or education to render the opinion." *Lippe v. Howard*, 287 F. Supp. 3d 1271, 1277-78 (W.D. Okla. 2018). "If so qualified, the Court must then determine whether the expert's opinion is reliable and relevant under the principles set forth in *Daubert* and *Kumho Tire*, in that it will assist the trier of fact." *Id.* at 1278. The party offering the expert testimony has the burden to prove that the expert is qualified and that his opinions are based in sound methodology and sufficient facts. *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003).

### i. Qualifications

The first step in the *Daubert* inquiry is to determine whether Overton is qualified by knowledge, skill, experience, training, or education to render an opinion. *Lippe*, 287 F. Supp. 3d at 1277-78. An expert's qualifications must provide "a foundation for a witness to answer a specific question." *Id*. at 1279 (quotation and citation omitted). An expert's qualifications must be both "(i) adequate in general, qualitative sense (i.e., knowledge, skill, experience, training, or education as required by Rule 702) and (ii) specific in the matters he proposes to address as an expert." *Id*. An expert cannot provide an opinion regarding matters on which his background and

14

training do not provide a proper foundation. *See English v. Estes Express Lines*, No. 14-CV-70, 2018 WL 1136058, at *6 (C.D. Cal. Feb. 15, 2018).

The Government does not challenge Overton's qualifications. Dkt. No. 52. Overton has an extensive CV and qualifications. *See generally* Dkt. No. 49-1. His education includes Basic Fire Fighting Academy, as well as courses related to fire cause/arson investigation and fuel gas appliance fires and explosions. *Id*. His current professional position is a fire and explosion consultant at his own firm. *Id*. His past professional positions include agent for the Oklahoma State Fire Marshals Office, private fire investigator, and Assistant Fire Chief/Fire Marshal for the City of Spencer, Oklahoma. *Id*. Personally, Overton has conducted and/or participated in more than four thousand (4,000) fire investigations. Dkt. No. 49-1. The Court finds that Overton's education and experience are adequate and specific enough to satisfy Rule 702 in this case.

### ii. Relevancy

After concluding Overton is qualified as an expert, the Court must evaluate whether his opinion is relevant. *Lippe*, 287 F. Supp. 3d at 1278. Evidence or testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue. This condition goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (quotations and citations omitted). "The 'touchstone' of admissibility of expert testimony is its helpfulness to the trier of fact." *Wilson v. Muckala*, 303 F.3d 1207, 1219 (10th Cir. 2002) (internal citation omitted).

The Government argues that because the fire related charges are attempts and only require proof of an intent to commit arson and a substantial step towards the commission arson, whether Defendant actually burned and destroyed property, or whether the fire and destruction would have substantially spread, is irrelevant. Dkt. No. 52 at 4. The Court disagrees.

First, the circumstances of the fire undoubtedly go directly to facts at issue in the case, including Defendant's intention and whether he took a substantial step towards the commission of arson. Further, while jurors may be generally familiar with campfires and using a propane tank for cooking purposes, most jurors lack the technical knowledge regarding Liquefied Petroleum gas fires, Boiling Liquid Expanding Vapor Explosions of propane containers, and the flame temperatures of various materials. Because Overton's testimony will assist the jury in interpreting evidence—namely, the specific circumstances of the fire at issue in this case—the Court concludes that Overton's testimony is relevant.

### iii. Reliability

The Court next considers whether the evidence is reliable. In making the reliability determination, the Court must focus on "principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. The Tenth Circuit has cited four factors that district courts should apply to make a reliability determination:

> (1) Whether a theory has been or can be tested or falsified; (2) whether the theory or technique has been subject to peer review and publication; (3) whether there are known potential rates of error with regard to specific techniques; and (4) whether the theory or approach has "general acceptance."

*Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2005) (quoting *Daubert*, 509 U.S. at 593-94). *Daubert* recognizes that these factors are not a "definitive checklist." *Daubert,* 509 U.S. at 593; *Kumho Tire*, 526 U.S. at 150-51. A trial judge has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire*, 526 U.S. at 152. Whether another court has accepted a methodology is relevant in determining whether expert testimony is reliable. *Att'y Gen. of Okla. v. Tyson Foods Inc.*, 565 F.3d 769, 780 (10th Cir. 2009). An expert witness may rely on his or her experience in that field if the witness "explain[s] how that experience leads to the conclusion reached, why that experience

16

is a sufficient basis of the opinion, and how that experience is reliably applied to the facts." *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (quoting Fed. R. Evid. 702 advisory committee's note (2000 amendment)).

The Government argues that Overton's testimony is not reliable "because no scientific data or detailed methodology was provided to support his conclusions." Dkt. No. 52 at 4. The Government further states that it takes issue with Overton's methodology because "[h]e does not mention whether he examined the specific campsite where the fire started, if the campsite was altered since the time of the fire, whether the layout of surrounding campsites (including the presence of tents and vehicles) was comparable to when Defendant started the fire more than seven months earlier, or if weather conditions (including wind speed and direction) were consistent" and, further, did not include any photographs, sketches, distance measurements, or scientific formula, did not explain the contents of the ordinary combustibles included in the fire at issue, and did not explain why the "flame temperature" is significant in terms of a fire spreading. *Id*. at 6.

Overton has nearly forty (40) years of experience working in the fire field and, in that time, has obtained significant training and experience related to fire causation, arson investigation, and fuel gas appliance fires and explosions. Dkt. No. 49-1. Overton intends to testify regarding the circumstances of the fire in this case, including the effect of the propane tank and the other materials contained in the fire. *Id*. The Court finds that Overton's experience is a sufficient basis for his opinion. The Government's concerns regarding the specific details of Overton's examination of the Resort, including differences between the Resort on the day of the examination and on September 3, 2022, may be addressed on cross-examination. Accordingly, the Court concludes that Overton's testimony is reliable.

### iv. *Daubert* Hearing

Finally, the Court denies the Government's request for a *Daubert* hearing. Dkt. No. 55. "Daubert does not mandate an evidentiary hearing." *United States v. Mathews*, 928 F.3d 968, 979 (10th Cir. 2019) (quoting *United States v. Nichols*, 169 F.3d 1255, 1262 (10th Cir. 2019)); *see also Kumho Tire,* 526 U.S. at 152 ("The trial court must have the . . . latitude . . . to decide whether or when special briefing or other proceedings are needed to investigate reliability"). Considering the parties' briefing, in addition to the *Daubert* and Rule 702 analysis above, the Court finds that a hearing is not necessary.

Because the factors weigh in favor of admissibility, the Court finds that Overton's testimony is admissible under Fed. R. Evid. 702. The Government may, of course, cross-examine Overton regarding his opinion and methodology. For these reasons, the Government's objection to Defendant's expert witness notice [Dkt. No. 52] is OVERRULED.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss Certain Counts [Dkt. No. 39] is GRANTED IN PART and DENIED IN PART. The Motion to Dismiss [Dkt. No. 39] is granted in part in that Count Five, Cruelty to Animals in Indian Country, in violation of 18 U.S.C. §§ 13, 1151, 1152, and 21 O.S. § 1685, is DISMISSED without prejudice. The Motion to Dismiss [Dkt. No. 39] is denied as to all other counts.

IT IS FURTHER ORDERED that Defendant's Motion in Limine [Dkt. No. 50] is DENIED.

IT IS FURTHER ORDERED that the Government's objection [Dkt. No. 52] to Defendant's Expert Notice [Dkt. No. 49] is OVERRULED.

DATED this 10th day of May 2023.

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　JOHN F. HEIL, III
　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE